INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL 532, Plaintiff-Appellee,

v.

BRINK CONSTRUCTION COMPANY,
Defendant-Appellant.

No. 85–3926.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1986.

Decided August 17, 1987.

Emilie Loring and Benjamin Hilley, Great Falls, Mont., for plaintiff-appellee.

Kelvin C. Berens, Omaha, Neb., for defendant-appellant.

Before FLETCHER, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

The International Brotherhood of Electrical Workers, Local 532 (Union) filed suit in district court under Labor Management Relations Act (LMRA) § 301(a), 29 U.S.C. § 185(a), against Brink Construction Company (Brink) for its alleged failure to comply with the dispute resolution provisions of a collective bargaining agreement between the two parties. The district court entered summary judgment for the Union ordering Brink to submit to dispute resolution. On appeal Brink argues that (1) the district court was without jurisdiction to determine the existence of an agreement, (2) a pending action between the parties before the National Labor Relations Board (NLRB) required the court to stay its proceedings, and (3) the court erroneously

found that Brink had not terminated its obligations under the agreement.

## I. BACKGROUND

Brink is a South Dakota corporation that does business as an electrical contractor. Brink operates primarily in the Dakotas but occasionally performs work in other states. At the time of filing of this suit Brink had no collective bargaining agreement with any labor organization in the Dakotas.

Brink was awarded a contract for electrical work on a power line substation in Miles City, Montana. To facilitate completion of the work, Brink signed a "Letter of Assent-A" on August 25, 1980 designating the Western Line Constructors chapter of the National Electrical Contractors Association (WLC) as its collective bargaining agent with the Union.[1] WLC is a multi-employer bargaining unit representing electrical contractors in negotiations with the Union. WLC regularly negotiates and executes multi-employer collective bargaining agreements ("master" agreements) with the Union on behalf of the contractors. *See generally NLRB v. Hayden Elec., Inc.,* 693 F.2d 1358, 1359–60 (11th Cir.1982).

Brink completed work at the Miles City site in 1982. During performance of the job two master agreements negotiated and executed by WLC were in effect. The first terminated on May 31, 1981. It was replaced by an agreement running from June 1, 1981 through May 31, 1983. The 1981–83 agreement provided for automatic year-to-year renewal after the 1983 date absent written notification by "either party" of termination or desire to change at least ninety days prior to the May 31 anniversary date.[2] It appears that Brink complied

1. The letter of assent provided:
 In signing this letter of assent [Brink] does hereby authorize [WLC] as its collective bargaining representative for all matters contained in or pertaining to the current approved outside labor agreement between [WLC] and [the Union]. This authorization, in compliance with the current approved labor agreement, shall become effective on the 1st day of June, 1980. It shall remain in

 effect until terminated by [Brink] by giving written notice to [WLC] and to the ... Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.

2. The Excerpt of Record does not contain a copy of the 1981–83 agreement. However, based upon the supplied subsequent 1983–85 agreement and the parties' representations at oral argument, we conclude that the agree-

with the terms of the master agreements during the job.

On December 14, 1982 Brink notified the Union and WLC by letter that it had completed the Miles City job and was revoking WLC's authority to bargain on its behalf.[3] Thereafter, the Union and WLC negotiated another master agreement effective from June 1, 1983 through May 31, 1985. Neither the Union nor WLC notified Brink of the negotiations or of the terms of the new agreement.

In August 1983 Brink was awarded another contract for work at the Miles City substation. Brink brought out-of-state non-Union workers onto the job. This action would have violated the terms of both the 1981–83 and 1983–85 agreements if either were in force between Brink and the Union at that time. Shortly thereafter the Union contacted Brink to negotiate the signing of a new letter of assent or, if Brink desired, an individual agreement. Negotiations proved unsuccessful. On October 24, 1983 counsel for the Union informed Brink's counsel that the Union considered Brink to be bound by the 1983–85 master agreement. On December 2, 1983 the Union, pursuant to the agreement's dispute resolution procedure,[4] requested that Brink meet with it in a "Labor-Management Committee" to resolve their disputes over contract violations at the second Miles City substation job. Brink refused, stating that it had no labor agreement with the Union.

The Union then brought suit in federal district court to compel Brink to submit to the agreement's dispute resolution procedure. Pending the court's resolution of the matter, Brink filed unfair labor practice charges against the Union with the NLRB. An NLRB administrative law judge (ALJ) concluded that (1) Brink was not bound to any agreement with the Union during the time of the second Miles City job, (2) the Union's lawsuit was therefore "baseless," (3) the Union brought the suit to coerce Brink to select a collective bargaining representative, and (4) the Union's actions accordingly constituted an unfair labor practice under 29 U.S.C. § 158(b)(1)(B). The ALJ ordered the Union to cease and desist from maintaining its lawsuit in federal district court. The Union appealed the ALJ's decision to the NLRB.

Pending the Union's appeal to the NLRB, the district court ruled on the parties' motions for summary judgment. The court held that Brink's withdrawal of WLC's bargaining authority did not terminate its obligations under the master agreement. Finding a contract existed between Brink and the Union during the time of Brink's second Miles City job, the court denied Brink's motion for summary judgment and granted the Union's motion for summary judgment ordering Brink to comply with the master agreement's dispute resolution procedure. In reaching its decision the court specifically declined to address two issues. First, the court did not decide whether the Union represented a majority of employees at the second Miles City job,

---

ment's termination provisions read essentially as follows:

 **Sec. 1.1** This Agreement shall take effect June 1, 1981, and shall remain in effect until May 31, 1983, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or terminated in the way later provided herein....

 **Sec. 1.2(a)** Either party desiring to change or terminate this Agreement must notify the other in writing at least 90 days prior to the anniversary date.

3. The December 14, 1982 letter reads:
 We have completed all work that we had under contract in Montana. Therefore, we inform you that Brink Construction Company

is revoking any authority that Western Line Contractors may have had to bargain on our behalf as a result of signing a "Letter of Assent" on August 25, 1980. This revocation is effective on today's date.

4. Both the 1981–83 and 1983–85 master agreements provide, upon forty-eight hour notice by either the Union or the employer, for a meeting of a "Labor-Management Committee." The committee consists of three members selected by the Union and three members selected by the employer. Should the committee fail to resolve the dispute by a majority vote, the matter is referred for adjudication to the Council on Industrial Relations for the Electrical Contracting Industry.

transforming the parties' repudiable "prehire" agreement into a fully binding collective bargaining agreement with respect to the project.[5] Rather, the court found Brink's letter insufficient either to repudiate the prehire agreement (if it were such) or to terminate the agreement by its terms (if it had matured into a nonrepudiable collective bargaining agreement). Second, the court did not decide which master agreement was in effect between Brink and the Union at the second Miles City job. Instead, the court noted the identity of the 1981–83 and 1983–85 agreements' dispute resolution procedures and left the issue of which of the two agreements controlled for dispute resolution.

## II. JURISDICTION

■ The district court held that it had jurisdiction to compel Brink to comply with the dispute resolution procedure. We review the district court's determination of subject matter jurisdiction de novo. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 549 (9th Cir.1984).

■ The district courts have jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." LMRA § 301(a), 29 U.S.C. § 185(a). This jurisdictional mandate authorizes the district courts to compel a contracting party to comply with a labor agreement's arbitration provision. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Section 301(a)'s "strong policy favoring judicial enforcement of collective-bargaining contracts ... sustain[s] the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).[6]

■ Although the district courts ordinarily have jurisdiction of actions to compel compliance with a labor agreement's dispute resolution procedure, the NLRB, and not the district courts, has "initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units." *Local No. 3–193 Int'l Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1301 (9th Cir.1980). Brink contends that the court's decision necessarily involved resolution of a number of "representational" issues within the NLRB's primary jurisdiction. Brink argues that the existence of these issues required the

---

**5.** Prehire agreements are specially recognized collective bargaining agreements in the construction industry. *See* 29 U.S.C. § 158(f). An employer may negotiate a prehire agreement with a nonmajority union, but either party may repudiate the agreement until the union achieves majority support in the appropriate employee bargaining unit. *United Bhd. of Carpenters & Jointers Local 2247 v. Endicott Enters.*, 806 F.2d 918, 920–21 (9th Cir.1986).

This circuit recognizes two methods of demonstrating majority status. If the agreement covers a permanent and stable unit of employees, the contract is converted into a binding agreement covering all employees from the time the union establishes majority support. Once a majority of the company's employees belong to the union, a rebuttable presumption of the union's majority status is created.

If an employer has no stable work force and hires on a job-to-job basis, "the employer's duty to bargain and honor the contract is contingent on the union's attaining majority support at the various construction sites."

**6.** Section 301(a) thus establishes an exception to the rule of *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), which provides that "[w]hen an activity is arguably subject to [an unfair labor practice action], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *See Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

*NLRB v. Pacific Erectors, Inc.*, 718 F.2d 1459, 1463 (9th Cir.1983) (citations omitted); *accord Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers*, 820 F.2d 1006, 1010 (9th Cir.1987). *But cf. Deklewa v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3*, 182 N.L.R.B. 184 (1987) (under prior NLRB precedent, if employer joins multiemployer association "[t]he particular character of the individual employer's unit of employees, even if hired on a project-by-project basis, effectively becomes irrelevant because all majority support inquires focus on the multiemployer unit.").

dismissal of the Union's suit. We examine each of these issues and conclude that the court had jurisdiction of this action.[7]

■ First, Brink argues that while the court has jurisdiction to resolve *breach* of contract disputes, it must leave the issue of the contract's *existence* and *validity* to the NLRB. We have recently rejected this approach, which forecloses jurisdiction merely on the basis of a dispute over the contract's validity. *See John S. Griffith Constr. Co. v. United Bhd. of Carpenters & Joiners*, 785 F.2d 706, 712 (9th Cir.1986) (in LMRA § 301 action district court may determine contract's existence unless that determination requires resolution of issue within NLRB's exclusive jurisdiction).

■ Second, Brink contends that the district court's decision that Brink was bound to either the 1981–83 or 1983–85 master agreements necessarily involved a determination that it was still a member of WLC in 1983 despite its 1982 letter withdrawing WLC's authority. This determination, argues Brink, involved the "identification of an appropriate bargaining unit," an issue within the NLRB's primary jurisdiction. The Ninth Circuit, however, has recently held that resolution of the effectiveness of an employer's withdrawal from a multi-employer bargaining unit does not fall within the NLRB's primary jurisdiction. *See Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 2895 (9th Cir.1987). Moreover, the district court, by leaving for dispute resolution the question of which of the 1981–83 or 1983–85 master agreements was in force between the parties during the second Miles City job, did not address WLC's authority to bargain on

Brink's behalf. On appeal the Union concedes that Brink's 1982 letter effectively withdrew WLC's authority. Thus, resolution of this case does not involve a question of WLC's authority to bargain on Brink's behalf.[8]

Finally, Brink argues that if a contract did exist between it and the Union after May 31, 1983, the district court had to resolve whether it was a repudiable prehire agreement or had become a nonrepudiable collective bargaining agreement. This, Brink contends, would require the court's determination of issues regarding the appropriate employee bargaining unit—did Brink hire on a project-by-project basis and did the Union represent a majority of workers in the appropriate bargaining unit—which are within the NLRB's primary jurisdiction. Assuming Brink is correct and these issues are within the NLRB's primary jurisdiction, we do not reach them on this appeal. We conclude *infra* that the agreement terminated under its own terms and thus need not decide whether Brink could have repudiated its obligations under it.

■ This case can be resolved by deciding the issue of the termination of a labor agreement. This issue is not within the NLRB's exclusive jurisdiction. *See Irwin v. Carpenters Health & Welfare Trust Fund*, 745 F.2d 553 (9th Cir.1984) (determining termination of collective bargaining agreement); *cf. John S. Griffith Constr. Co.*, 785 F.2d at 709 (district court has jurisdiction to determine repudiation of prehire agreement). The district court was correct to address it.[9]

---

**7.** Because we conclude that the district court did not need to reach any issue within the NLRB's primary jurisdiction to resolve this case, we do not decide whether dismissal or a stay pending completion of the NLRB action would have been the proper device to avoid a conflict of jurisdiction. *See generally Northern Cal. Dist. Council of Hod Carriers v. Opinski*, 673 F.2d 1074, 1076 (9th Cir.1982) ("Where a court suspends proceedings in order to give preliminary deference to an independent adjudicating body but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.").

**8.** Given the posture of the case on appeal we need not determine whether the district court properly avoided resolving which agreement controlled dispute resolution.

**9.** Neither party contends that the master agreements required that the issue of their termination be decided through dispute resolution instead of by the district court. *See generally AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (describing respective roles of court and arbiter in enforcing contracts). We therefore do not address this issue.

### III. THE PENDING NLRB ACTION

 Brink argues that even if the district court would ordinarily have jurisdiction of this action, the pending NLRB proceeding precluded the court from reaching the merits. Brink first contends that the court should have given collateral estoppel effect to the ALJ's decision that the Union's suit was "baseless." We review the district court's decision on the availability of collateral estoppel de novo. *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

 Although we have previously accorded collateral estoppel effect to a trial examiner's decision to which no exceptions were filed with the NLRB, *see Paramount Transp. Sys. v. Chauffeurs Local 150*, 436 F.2d 1064 (9th Cir.1971), we have declined to do so with ALJ decisions pending NLRB review, *see Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 748 (9th Cir.1985). *McClatchy Newspapers* held that ALJ decisions pending NLRB review, unlike final NLRB decisions comporting with due process and necessarily resolving the issue on which collateral estoppel is asserted, have no preclusive effect.[10] We accordingly decline to give the ALJ's decision any preclusive effect on the present litigation.

 Brink also contends that the district court should have stayed its proceedings pending final NLRB resolution of Brink's unfair labor practice charge. We review the district court's denial of a stay for abuse of discretion. *McClatchy Newspapers*, 762 F.2d at 746. We will not reverse "unless we have a definite and firm conviction that the district court committed an error after considering the relevant factors." *Id.* at 747. While the district

court's opinion did not explicitly address all the factors relevant to the denial of a stay, we can examine the record independently to determine whether the court abused its discretion. *Cf. Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir.1986) (appellate court may independently review record to determine whether district court's dismissal of suit for failure to prosecute was an abuse of discretion).

 The district court, noting both its jurisdiction to hear this suit to enforce a labor contract and the "separate and distinct" nature of Brink's unfair labor practice change, refused to defer to the NLRB proceedings. Although the Union's LMRA § 301 suit and Brink's unfair labor practice charge involve a virtually identical issue (i.e., the merit of the Union's suit), we cannot conclude that the district court abused its discretion in denying the stay. The district court's order addressed no issues within the NLRB's primary jurisdiction. While the potential for conflict exists between the court's decision and the NLRB's ultimate decision, this alone does not compel the stay. *Cf. Orange Belt Dist. Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487, 490 (9th Cir.1981) (potential for conflict between arbiter's award and NLRB decision does not preclude district court's confirmation of award). Indeed, it would seem that deference, if any, on the issue of the validity of the Union's lawsuit should be paid to the district court, in which Congress under LMRA § 301 has vested "primary" jurisdiction of suits for breach of collective bargaining agreements, *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex Corp.*, 708 F.2d 488, 490 n. 3 (9th Cir.1983); *see also La Mirada Trucking, Inc. v. Teamsters Local Union*

---

10. The denial of collateral estoppel effect to ALJ decisions pending NLRB review is based on the principle of finality. While a decision of an administrative agency acting in a "judicial capacity" may preclude relitigation if the requirements of res judicata or collateral estoppel are met, *see United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Exxon Corp. v. Fischer*, 807 F.2d 842, 845–46 (9th Cir.), *amended*, 817 F.2d 1429 (9th Cir.1987), only final agency decisions are entitled to preclusive effect, *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir.1985); *Restatement (Second) of Judgments* § 83(2)(d) & comment e (1982); *see* 2 K. Davis, *Administrative Law Treatise* § 18.06, at 586–87 (1958). An ALJ decision to which exceptions are timely filed becomes the NLRB's decision only after the NLRB reviews and adopts it, *see* 29 C.F.R. §§ 101.11, 101.12 (1986), and is not final until that time.

*166*, 538 F.2d 286, 288 (9th Cir.1976) (district court, not NLRB, has authority to hear suits for breach of collective bargaining agreements), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977).[11]

*McClatchy Newspapers* does not compel a different result. There this court listed a number of factors relevant to a stay of district court proceedings pending appeal of an ALJ decision to the NLRB. 762 F.2d at 749–50. One important factor in that case was the potential preclusive effect on the district court of the eventual NLRB decision interpreting the collective bargaining agreement to resolve "a representational matter within the Board's primary jurisdiction." *Id.* at 749. We do not, however, view this factor as requiring an automatic stay whenever the NLRB could, in resolving a "representational matter," decide an issue of relevance to the district court's proceedings. Without deciding whether the filing of a LMRA § 301 suit to coerce Brink to select a collective bargaining representative is a "representational matter," we note the inappropriateness of a rule requiring an automatic stay in cases such as this. Here, unlike in *McClatchy Newspapers, see id.* at 743, 748, the *defendant* in the LMRA § 301 suit filed unfair labor practice charges *after* the filing of the suit, raising the validity of the suit as an element of the unfair labor practice charge. Requiring an automatic stay to permit litigation before the NLRB of the validity of a suit pending in district court would frustrate the congressional intent to have the district courts resolve labor-management contract disputes. Moreover, such a rule would turn on its head the general federal court practice of avoiding conflicts of jurisdiction by the court in the subsequently filed proceeding staying its proceedings pending the outcome of the initial suit. *See generally* 2 J. Moore, J. Lucas, H. Fink & C. Thompson, *Moore's Federal Practice* ¶ 3.06[2], at 3–43 (1986). In this case, where the district court resolved issues not within the NLRB's primary jurisdiction (the

repudiation and termination of a collective bargaining agreement), the goal of avoiding logically inconsistent judgments, *McClatchy Newspapers*, 762 F.2d at 749, will be ensured by the NLRB giving collateral estoppel effect to a final judgment of the district court. *See NLRB v. Heyman*, 541 F.2d 796, 800 (9th Cir.1976) (prior district court judgment precludes relitigation of resolved issues before the NLRB).

## IV. TERMINATION OF THE LABOR CONTRACT

We review the district court's grant of summary judgment to the Union and denial of summary judgment to Brink de novo, to determine whether there are no genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 561 (9th Cir.1984); Fed.R.Civ.P. 56(c). The interpretation of unambiguous contractual language is a fully reviewable matter of law. *Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir.1985); *Irwin*, 745 F.2d at 555 (collective bargaining agreement termination issue turning on interpretation of agreement is fully reviewable matter of law).

■ The district court held there was no genuine issue that Brink's December 14, 1982 letter was insufficient to either terminate or repudiate the agreement between the parties. We see the effect of the letter differently and conclude that the agreement terminated under its own terms effective May 31, 1983, prior to the start of the second Miles City job.

The letter of assent and master agreements do not support Brink's contractual obligation to the Union during the second Miles City job. The Union concedes that Brink's letter withdrew, effective December 14, 1982, WLC's authority to bargain on its behalf. Absent this authority WLC could not commit Brink to the subsequently negotiated 1983–85 master agreement.

---

11. We do not on this appeal consider the propriety of the ALJ's decision expanding *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (NLRB may issue cease and desist order against state proceeding that is meritless and filed for coercive purposes), to LMRA § 301 suits in federal district court.

Brink therefore could remain obligated to the Union only under the 1981–83 master agreement.

The 1981–83 agreement, however, terminated under its own terms on May 31, 1983. While it provided for year-to-year renewal absent termination by "either party," the parties to the 1981–83 agreement—WLC and the Union—replaced it with the newly negotiated 1983–85 master agreement. We do not read the letter of assent and the 1981–83 master agreement's termination clause as also requiring Brink to notify the Union of its intent to terminate to avoid automatic year-to-year renewal. The termination clause's use of the term "either party" refers unambiguously to WLC and the Union, and not to firms that sign letters of assent to be bound by the agreement. (The agreement, when referring to firms obligated through letters of assent, typically uses the term "employer" or "contractor.") Brink's termination of WLC's bargaining authority on December 14, 1982 terminated, effective May 31, 1983, any obligation it owed to the Union under the 1981–83 agreement.

Nor can Brink's failure to expressly terminate its obligations to the Union under the 1981–83 master agreement be construed as Brink's "adoption" of the 1983–85 master agreement. *See generally Arizona Laborers Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512, 1520 n. 13 (9th Cir.1985) (suggesting in dictum that employer may adopt master agreement by honoring its terms). The record contains no evidence of Brink's compliance with or intent to be bound by the subsequent agreement. Rather, the subsequent negotiations between Brink and the Union could only support an inference that neither party believed a labor agreement was in effect between them.

Because neither the 1981–83 nor the 1983–85 master agreement was in effect between Brink and the Union by the time of the second Miles City job, Brink was entitled as a matter of law to prevail on the Union's claim. The district court erred in granting the Union summary judgment and in denying Brink's motion for summary judgment.

## V. ATTORNEYS' FEES

Brink has requested attorneys' fees in the event it prevails on this appeal. It cites only *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (court may assess attorneys' fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' ") (quoting *F.D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). The record in this case does not demonstrate bad faith on the part of the Union on this appeal. Brink's request is denied.

## VI. CONCLUSION

The district court had jurisdiction of the Union's suit to compel Brink's compliance with the terms of a labor agreement. The court did not abuse its discretion in refusing to stay its proceedings pending final NLRB resolution of Brink's unfair labor practice charge. On the merits, the court erred in holding a labor agreement existed between the parties during the time of this controversy. The district court's grant of summary judgment for the Union is REVERSED and the action is REMANDED for entry of judgment for Brink.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent from Part IV of the majority's opinion. While I agree that Brink, because it withdrew WLC's authority to bargain on its behalf, was not bound by the 1983–85 master agreement, I cannot agree that Brink's obligations under the 1981–83 master agreement were terminated.

Brink, by its letter of assent, bound itself to the terms of the 1981–83 master agreement. Brink's letter of December 14, 1982, withdrew only WLC's authority to bargain on Brink's behalf, it did not repudiate Brink's obligations under the existing agreement. No one disputes that Brink continued to be bound by the 1981–83

agreement after December 14. Because WLC no longer represented Brink, any action taken by WLC subsequent to December 14 could not affect Brink's obligations under the 1981–83 agreement. By terminating WLC's authority to act as its agent without concurrently repudiating the master agreement, Brink became a party to that agreement and was obligated to deal directly with the Union. If it wished to terminate the agreement it was required to follow the termination procedures spelled out in the agreement.

The majority finds that the 1981–83 agreement "terminated under its own terms on May 31, 1983." *See supra* at 215. It is clear, however, that the agreement could not "terminate on its own terms." On its own terms, the agreement was automatically renewed absent affirmative steps taken to prevent such renewal. It is true that WLC and the union negotiated a new agreement for 1983–85. However, after December 14, 1982, WLC's actions had no legal effect on Brink. It is inconsistent to find that WLC had the power to terminate the agreement as to Brink but did not have the power to bind Brink to the 1983–85 master agreement. Once Brink had withdrawn its letter of assent, while leaving its obligations under the master agreement intact, it was required to comply with the notice provisions of the master agreement. Because Brink did not give timely notice of its intent to terminate, the 1981–83 agreement was renewed automatically.[1]

Accordingly, I would hold that the district court properly granted the Union's motion for summary judgment.

---

1. The Union's initial response to Brink's refusal to comply with the terms of the master agreement, appears inconsistent with the Union's claim before the district court that Brink was bound by the 1981–83 agreement. First the Union tried to negotiate a new letter of assent or individual agreement; it then claimed that Brink was bound by the 1983–85 agreement.

*See supra* at 210. The fact that the Union may not have realized the continuing nature of Brink's obligations under the 1981–83 agreement at the outset does not, however, serve to excuse Brink. One does not lose legal rights by failing to recognize them or enforce them at the first possible opportunity.