James SHELTON, Jr., Plaintiff,

v.

HAWAII CARPENTERS' PENSION, HEALTH & WELFARE, APPRENTICESHIP, VACATION & HOLIDAY and ANNUITY TRUST FUNDS, Defendants/Counter – Claimants/Third-Party Plaintiffs,

ABC Custom Cedar Homes Pacific, Third–Party Defendant.

Civ. No. 87–0666.

United States District Court, D. Hawaii.

Dec. 3, 1987.

Jeffrey S. Harris, Wayne S. Yoshigai, Honolulu, Hawaii, for plaintiff.

Ashley K. Ikeda, Honolulu, Hawaii, for defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### I.

This case came on for hearing before this court on the plaintiff's motion for summary judgment. An order granting the plaintiff's motion for summary judgment would have the effect of declaring that the plaintiff employer is not obligated to make contributions to the defendant ERISA trust funds. Shelton maintains that he has never made ERISA trust fund contributions for ABC employees and that he is not required to make such contributions.

### II.

Plaintiff Shelton is the sole proprietor of a business called James Shelton, Jr. General Contractor (General Contractor). He is also one of two general partners in a business called ABC Custom Cedar Homes Pacific (ABC). The other general partner in ABC is Shelton's wife.

Plaintiff Shelton portrays General Contractor and ABC as two separate and distinct business entities. Shelton states that General Contractor first employed employees in 1979, while ABC hired its first employees in 1985. Shelton further states that General Contractor entered into a collective bargaining agreement (CBA) with the United Brotherhood of Carpenters and Joiners, Local Union No. 745 (Local 745) in 1979, but that this CBA was terminated in 1984 at the latest. According to Shelton, ABC has never entered into a CBA with Local 745 and has "never complied with, or intended to be bound by, any such CBA."

As part of the CBA which General Contractor executed with Local 745 in 1979, Shelton was required to make certain contributions to ERISA trust funds in an amount determined as a function of the number of hours worked by General Contractor employees. There appears to be no dispute that Shelton complied with the terms of the master CBA and made all required trust fund contributions for General Contractor employees.

Although the CBA between General Contractor has been terminated, as noted above, Shelton has continued in many respects to comply with an existing master CBA which has been executed between a multi-employer bargaining unit and Local 745; Shelton is not a signatory to this existing master CBA. Specifically, Shelton has continued to make the ERISA trust fund contributions for General Contractor employees as contemplated by the presently existing master CBA. According to the affidavit of Robert Asato which the defendant ERISA trust funds attached to their memorandum in opposition to the motion for summary judgment, Shelton has also submitted Employer's Monthly Reports to the funds as required by the master CBA. Immediately above the signature line, these reports contain the following clauses:

(1) "[t]he undersigned, as the authorized representative of the Contractor herein agrees to comply with the wages, hours and working conditions of the collective bargaining agreement between Local 745

and signatory members of [the multi-employer bargaining unit]."

(2) "[t]he Contractor hereby adopts and agrees to be bound by the [ERISA] trust agreements ... [referenced in the master CBA]."

The affidavits attached to the defendant trust funds' memorandum in opposition also state that Shelton has continued to submit union working dues monthly reports to Local 745 along with the required union dues for General Contractor employees, even after Shelton's written labor agreement with the union expired. Furthermore, the affidavits evidence the fact that Shelton has continually utilized the union's carpenter referral service.

█ In essence, the adoption by conduct theory is based upon the proposition that an employer who complies with the terms of a CBA, even though he has not executed the CBA, may be held to have "adopted" the CBA by conduct. Based upon Shelton's conduct in his operation of General Contractors, this court finds that there is a genuine issue of material fact with respect to whether General Contractor can be found to have adopted the master CBA by conduct. In *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1520 n. 13 (9th Cir.1985), the Ninth Circuit stated that "[w]e have not yet had the opportunity, and find it unnecessary and inappropriate here, to rule upon the validity of the adoption theory." The same opinion states, however, that "a strong argument can be made that the employer, by honoring the terms of the [CBAs] ... did, in fact, adopt the [CBAs]." *Id.* Furthermore, in *Hawaii Carpenters' Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 295 n. 8 (9th Cir.1987), the Ninth Circuit stated in dicta that "an employer may be held to have" " 'adopted' the terms and conditions of the [CBA]" "by embarking on a course of conduct evincing an intention to be bound." Thus, the Ninth Circuit has strongly indicated, and this court finds, that in a situation such as that presented in the instant case, an employer may be found to have adopted a labor agreement to which he is not a signatory by conduct.

## III.

█ At some time in May or June of 1987, the defendant trust funds demanded that Shelton permit an audit of ABC's books. Shelton states that the defendant trust funds had never previously required General Contractor to make ERISA trust fund contributions for ABC employees. Shelton intimates that the audit demand was made in retaliation for Shelton's employment of Gordon Yanagawa, an opponent of Local 745 Business Representative Walter Kupau. Although Shelton objected to the audit and contended that he was under no obligation to make ERISA trust fund contributions for ABC employees, he allowed the audit after the defendant trust funds agreed that Shelton's permission to conduct the audit did not constitute an admission of liability to the trust funds insofar as ABC employees were concerned. After the audit, the defendant trust funds demanded that Shelton pay approximately $27,600 in delinquent ERISA trust fund contributions for ABC employees for the period April 1986 through May 1987.

Shelton maintains that ABC has no obligation to make ERISA trust fund contributions since it is not a party to, and has never been a party to, any CBA. The ERISA trust funds, on the other hand, argue that ABC has such an obligation and premises its argument on three alternative theories: (1) that ABC has adopted the CBA expressly through execution of a "memorandum agreement," (2) that ABC has adopted a CBA by conduct, and (3) that ABC and General Contractor are alter egos. Shelton has moved this court for summary judgment declaring that ABC is not obligated to the ERISA trust funds.

### A. *Express Agreement*

The evidence submitted by Shelton in his motion for summary judgment establishes the fact that Local 745 and Shelton were engaged in negotiations in September of 1987 whereby Shelton would sign a "memorandum agreement" agreeing to be bound

by a master CBA which had been negotiated by a multi-employer bargaining unit and the Union. Shelton executed the memorandum agreement on September 21, 1987 subject to the conditions set forth in an attached letter. The letter states that "the attached memorandum of agreement and certificate of receipt and acceptance signed by Mr. Shelton will apply only to employees of James Shelton General Contractor, and not to employees of ABC Custom Cedar Homes ..."

As noted above, the defendant ERISA trust funds argue that Shelton expressly adopted the master CBA for ABC employees when he executed a "memorandum agreement" on September 21, 1987. The record is clear, however, that Shelton executed the "memorandum agreement" on the express condition that the execution was for General Contractor employees only and *not* for ABC employees. Thus, the language of the "memorandum agreement," when read in connection with the letter which was attached to the agreement, establishes that Shelton *did not* expressly enter into an agreement which would obligate him to make ERISA trust fund contributions for ABC employees.

Even assuming that there was some ambiguity on the face of the memorandum agreement, the Ninth Circuit has held that "where a contract's meaning is not clear on its face, its interpretation depends upon the parties' intent at the time it was executed, which is an issue for the trier of the fact." *Laborers Health & Welfare Trust Fund v. Kaufman & Broad*, 707 F.2d 412, 418 (9th Cir.1983) (citations omitted). In the instant case, there is simply no evidence which would allow a reasonable juror to find that Shelton's intent upon executing the memorandum agreement was to be bound to the master CBA insofar as the employees of ABC are concerned.

For the foregoing reasons, this court concludes that there is no express agreement which imposes upon ABC obligations running in favor of the defendant ERISA trust funds. Given Shelton's express reservation in executing the memorandum agreement insofar as General Contractor

employees are concerned, this court finds that there was no meeting of minds with respect to coverage of ABC employees.

### B. *Adoption by Conduct*

While the defendant ERISA trust funds maintain that there is a genuine issue of fact with respect to whether ABC has, itself, adopted by conduct an existing master CBA, Shelton argues that it is clear that ABC has *not* adopted any such labor agreement. In support of his argument, Shelton cites this court to the case of *International Brotherhood of Electrical Workers, Local 532 v. Brink Construction Co.*, 825 F.2d 207 (9th Cir.1987). In *Brink*, the Ninth Circuit held that an employer could not have been held to have "adopted" a CBA in the absence of "evidence of [the employer's] compliance with or intent to be bound by the [CBA]." *Id.* at 215. The court further held that "negotiations between [the employer] and the union could only support an inference that neither party believed a labor agreement was in effect between them." *Id.*

The defendant ERISA trust funds have not been able to point to any evidence of Shelton's "compliance with or intent to be bound by" any CBA insofar as the employees of ABC are concerned. *Brink Construction Co.*, 825 F.2d at 215. There is no evidence that Shelton had ever made contributions to the defendant ERISA trust funds for ABC employees. While it is clear that Shelton could be found to have adopted a CBA insofar as General Contractor employees are concerned, since Shelton has voluntarily complied with the terms of a master CBA to which he was not a signatory, the record is completely devoid of any evidence that Shelton complied with, or had the intent to be bound by, the master agreement for ABC employees. In the absence of such evidence, a finding that Shelton had adopted a CBA for his ABC employees would be erroneous. *Id.*

Furthermore, this court notes that when Shelton executed a "memorandum agreement" with Local 745 on September 21, 1987, he specifically stated that the agreement was being executed with the intention

that it would cover General Contractor employees, *but not* ABC employees. This court finds that Shelton's refusal to enter into a "memorandum agreement" on behalf of ABC employees is further evidence that Shelton did not intend to be bound by a labor agreement insofar as ABC employees are concerned and, accordingly, did not adopt by conduct any labor agreement with respect to ABC employees. Accordingly, this court concludes that there is not a genuine issue of fact as to whether ABC has adopted by conduct an existing labor agreement. The defendant ERISA trust funds have failed to present this court with any evidence which would tend to establish that such an adoption had occurred.

### C. *Alter Ego Theory*

Lastly, the defendant ERISA trust funds attempt to defeat Shelton's motion for summary judgment by claiming that ABC and General Contractor are alter egos. "Under the alter ego doctrine, the court considers the interrelation of operations, common management, centralized control of labor relations, and common ownership. If these factors show that the transaction is a sham designed to avoid the obligations of a collective bargaining agreement, the nonsignatory employer will be bound." *Gateway Structures, Inc. v. Carpenters 46 Northern California Counties Conference Board of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO,* 779 F.2d 485, 488 (9th Cir.1985). "The most important single factor is centralized control of labor relations." *J.M. Tanaka Construction, Inc. v. National Labor Relations Board,* 675 F.2d 1029, 1034 (9th Cir.1982).

In the instant case, affidavits attached to the defendant ERISA trust funds' memorandum in opposition to the motion for summary judgment state that plaintiff Shelton is the sole owner of General Contractor and one of two general partners of ABC; that General Contractor and ABC share the same location and principal office; that General Contractor and ABC are both managed by plaintiff Shelton; that the books of General Contractor and ABC are kept by the same individuals; that General Contractor and ABC advertise the same Hawaii State Contractor's License; that General Contractor and ABC have the same phone number in the 1987 Hawaiian Telephone directory; and that General Contractor and ABC "perform the same type of work and utilize the same equipment, tools and workforce/employees." The foregoing facts are sworn to in the affidavits of Patrick Webb and Robert Asato. Shelton has failed to rebut these factual contentions and this court finds that these facts could lead a reasonable juror to find that General Contractor and ABC are alter egos.

If, indeed, ABC and General Contractor are alter egos, then Shelton *might* have an obligation to make contributions to the ERISA trust funds for ABC employees since General Contractor could be found to have adopted the master CBA through its compliance with the master CBA's terms, as noted above.

■ Shelton argues that the alter ego theory is inappropriate here because General Contractor was not a signatory to any agreement with Local 745 or the defendant trust funds for the period of time in dispute, April 1986 through May 1987. Shelton's attorney argues that "[t]he focus on whether there is an attempt to avoid the obligations of the agreement does not apply when there is no signed agreement to avoid." In support of this contention, counsel for Shelton has cited this court to the case of *Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1413 (9th Cir.1984), wherein the Ninth Circuit held that implied contractual duties could not be imposed upon a successor employer in the absence of "a binding labor agreement." The court's opinion in *Russell* does not in any way suggest that the "binding labor agreement" must be written.

Having found that General Contractor may be bound to a master CBA through an adoption by conduct theory, and having further found that ABC and General Contractor may be alter egos, this court concludes that ABC may be found to have

obligations running in favor of the defendant ERISA trust funds. The alter ego doctrine is a creature born of necessity. Broadly speaking, the doctrine was developed in response to the unfortunate situation whereby some employers who were bound to labor agreements attempted to escape their contractual obligations by setting up "sham corporations" for the conduct of their businesses; such "sham corporations" were not contractually bound to a labor agreement and thus, the employer could conduct his business without the burden of the contractual obligations. The creation of the "alter ego" doctrine was intended to put an end to this abuse. This court finds that such abuse is as insidious when the employer is bound to a labor agreement through adoption by conduct as when the employer has executed a written collective bargaining agreement. This court can discern no rational reason for concluding, as Shelton urges the court to do, that contractual obligations may not be imposed upon the alter ego of a party who has adopted a labor agreement by conduct. Thus, there is a genuine issue of fact with respect to whether Shelton is obligated to make trust fund contributions for ABC employees.

### IV.

WHEREFORE, it is HEREBY ORDERED that the plaintiff's motion for summary judgment is DENIED. Specifically, this court finds that there are no genuine issues of material fact with respect to whether ABC has, itself, adopted a labor agreement by conduct or with respect to whether Shelton has entered into an express agreement with Local 745 insofar as ABC employees are concerned. The record on file clearly indicates that there has not been such an adoption or an express agreement. However, this court finds that there are genuine issues of material fact with respect to whether General Contractor adopted a master CBA by conduct and with respect to whether ABC and General Contractor are alter egos. If General Contractor has adopted a master CBA, and if ABC and General Contractor are alter egos, then

ABC may have obligations running in favor of the defendant ERISA trust funds.