5 F.3d 540
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 STEINY & COMPANY, INC., Petitioner-Appellant,
v.
LOCAL UNION 6, INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, et al., Respondents-Appellees.
 No. 92-15201.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 17, 1993.
Decided Aug. 31, 1993.
 
 Appeal from the United States District Court for the Northern District of California; No. CV-91-00155-DLJ, D. Lowell Jensen, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before LAY,* Senior Circuit Judge, HUG and SCHROEDER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 An arbitration committee awarded back wages and benefits to Larry Farnum, a former employee of Steiny & Company (Steiny). Farnum was a member of Local 6, International Brotherhood of Electrical Workers (Local 6). Pursuant to 29 U.S.C. Sec. 185(a), Steiny sought to vacate the arbitration award. On cross motions for summary judgment, the district court granted summary judgment in favor of Local 6 and ordered the arbitration award enforced. This appeal followed. We affirm.
 
 I. FACTS
 
 3
 Steiny is an electrical contracting firm located in Vallejo, California. The San Francisco Electrical Contractors Association (SFECA) is a multi-employer bargaining association that represents a number of individual electrical contracting companies, including Steiny. As bargaining representative, the SFECA periodically enters into various collective bargaining agreements with Local 6. These agreements included, inter alia, an Outside Line Agreement and an Inside Wiremen's Agreement. They generally lasted for two years and did not automatically renew.[1]
 
 
 4
 On January 18, 1973, Steiny executed a "Letter of Assent--A," which authorized the SFECA to bind Steiny to an outside line-worker collective bargaining agreement (Outside Line Agreement). The Letter of Assent provided specific requirements on termination:
 
 
 5
 It shall remain in effect until terminated by the undersigned employer giving written notice to the [SFECA] and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.
 
 
 6
 At issue in this case is Steiny's attempt to terminate the SFECA's authority to bargain the Outside Line Agreement on its behalf. On December 29, 1983,[2] Steiny sent a letter to the SFECA, stating as follows:
 
 
 7
 [Steiny] hereby resigns as a signatory contractor member from [SFECA] and hereby revokes and withdraws any and all authority previously given to you ... to engage in collective bargaining negotiations on behalf of the Company with any labor organization.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 [Steiny], from on and after the effective date of this letter, will not be bound to any extensions or renewals of any collective bargaining agreement in effect currently or negotiated in the future....
 
 
 11
 The next day, it also delivered to Local 6 a letter which stated as follows:
 
 
 12
 In accordance with the termination provisions of the current Inside Wiremen's Collective Bargaining Agreement with your Union which terminates by its terms on May 31, 1984, the undersigned employer hereby notifies your Union that said employer intends to terminate said Agreement.
 
 
 13
 Our company wishes to bargain independently with your Union for a new Collective Bargaining Agreement to succeed the agreement which we are now terminating and to that end, we withdraw any and all authority from any employer association to bargain on our company's behalf.
 
 
 14
 (Emphasis added.)
 
 
 15
 Farnum worked for Steiny as an outside wireman from 1968 to November 1990. He was the only outside wireman working for Steiny who was a member of Local 6. Steiny continued to pay Farnum's wage and benefits in accordance with the terms of the Outside Line Agreement until October 1987, when Steiny began to pay Farnum at a lower rate of pay.[3]
 
 
 16
 In February 1988, Steiny received a document called the Ninth District Manpower Reciprocal Understanding (Reciprocal Understanding) from Local 6. According to Steiny, this document required it to pay Farnum at the lower wage rate.[4] The Understanding further provided that disputes arising over its interpretation were to be referred to the Ninth District Office for resolution.
 
 
 17
 In September 1990, Local 6 filed a grievance with the Joint Labor-Management Committee for the Electrical Construction Industry (Arbitration Committee), following the grievance procedure set out in the Outside Line Agreement. Under the terms of the Outside Line Agreement, grievances are to be resolved by a majority vote of the Arbitration Committee. Steiny requested the representation of counsel at the hearing, but the Committee refused pursuant to a longstanding policy. The Arbitration Committee upheld the grievance and ordered Steiny to pay $29,194.41 in back wages and benefits.
 
 
 18
 Pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), Steiny filed a petition with the district court to vacate the arbitration award, arguing that it was not bound by the Outside Line Agreement and thus the Arbitration Committee had exceeded its jurisdiction. Local 6 cross-petitioned to enforce the arbitration award. On cross motions for summary judgment, the district court granted summary judgment in favor of Local 6, finding that Steiny had failed to terminate the SFECA's authority to bargain the Outside Line Agreement on its behalf and thus Steiny was bound by subsequent Agreements.
 
 II. DISCUSSION
 
 19
 A. Termination of the SFECA's authority to bargain the Outside Line Agreement on Steiny's behalf
 
 
 20
 The central issue raised by Steiny is whether Steiny is bound by Outside Line Agreements collectively bargained by the SFECA and Local 6 after May 1984, because it did not properly terminate the SFECA's authority to bargain that Agreement on its behalf. Steiny argues that the Arbitration Committee exceeded its jurisdiction in deciding this grievance because Steiny was not bound by the Outside Line Agreements. We review de novo the district court's grant of summary judgment to Local 6 and denial of summary judgment to Steiny. American Metal Prods., Inc. v. Sheetmetal Workers Int'l Ass'n. Local 104, 794 F.2d 1452, 1454 (9th Cir.1986).
 
 
 21
 Examining the letters sent by Steiny, it is clear that Steiny's letter to the SFECA contained language that indicated Steiny's intent to terminate all authority to bargain on Steiny's behalf. However, the letter to Local 6 on its face terminated only the Inside Wiremen's Agreement (which was to expire on the same day as the Outside Line Agreement) and the SFECA's authority to bargain that particular agreement on Steiny's behalf. The district court, in enforcing the arbitration award, found the letter to Local 6 was not sufficient to terminate the SFECA's authority to bargain the Outside Line Agreement on Steiny's behalf. This court strictly construes unambiguous termination provisions found in a labor agreement. See Irwin v. Carpenters Health & Welfare Trust Fund, 745 F.2d 553, 555-56 (9th Cir.1984). We find no legal justification to reverse the district court's findings. The Letter of Assent required Steiny to give proper notification of termination to both the SFECA and Local 6 before it could terminate. This was not done here.
 
 
 22
 Steiny contends that the case of International Brotherhood of Electrical Workers, Local 532 v. Brink Constr. Co., 825 F.2d 207 (9th Cir.1987), requires a holding to the contrary. We disagree. In Brink, an employer (Brink) signed a letter of assent essentially identical to the Letter of Assent in this case. The letter authorized a multi-employer bargaining association to bargain on Brink's behalf. Brink later decided to terminate the bargaining association's authority. Unlike the case at hand, however, Brink timely notified both the union and the bargaining association that it was "revoking any authority that [the association] may have had to bargain on our behalf as a result of signing a 'Letter of Assent'...." Id. at 210 n. 3. In Brink, the issue was whether Brink was also required to terminate its obligation under the underlying master agreement, which renewed automatically. Id. at 209, 215. The majority concluded that Brink's failure to expressly terminate the master agreement did not obligate Brink under subsequent agreements negotiated by the bargaining association because the bargaining association had no authority to bargain on Brink's behalf. Id. at 214-15. The facts at bar are easily distinguished. Unlike Brink, Steiny did not terminate the SFECA's authority to bargain all agreements on its behalf. Rather, it terminated only the SFECA's authority to bargain the Inside Wiremen's Agreement.
 
 
 23
 Steiny argues that it intended to terminate any and all collective bargaining agreements with Local 6. We agree with the district court, however, that Steiny's intent is irrelevant "because on its face the letter did not apply to the Outside Line Agreement." Steiny also points out that on January 31, 1984, the SFECA sent a letter to Local 6, which included a list of companies on whose behalf the SFECA was bargaining the Outside Line Agreement. Steiny was not on that list. Steiny argues that Local 6 had actual notice of its intent to terminate the SFECA's authority to bargain the Outside Line Agreement on its behalf. Not only is this letter not from the employer, but it is also untimely. The clear terms of the Letter of Assent required Steiny to give notice at least 150 days prior to termination of the Outside Line Agreement.[5]
 
 
 24
 We conclude that the SFECA retained the authority to negotiate subsequent collectively-bargained Outside Line Agreements on Steiny's behalf, and that these agreements are binding on Steiny. We therefore need not reach Local 6's argument that Steiny is bound by subsequent Outside Line Agreements based on its post-termination conduct. We also do not reach Steiny's argument that the grievance was untimely filed because it is premised on the assumption that the SFECA's authority to bargain on behalf of Steiny was properly terminated and that Steiny was therefore not bound by subsequent Outside Line Agreements.
 
 B. The Reciprocal Understanding
 
 25
 Steiny argues that it properly paid Farnum's wage according to the terms of the Reciprocal Understanding. We note first that Steiny's argument is undermined by the fact that it received the Reciprocal Understanding in February 1988, but began paying Farnum at the lower wage rate in October 1987.
 
 
 26
 In its brief, Steiny premises this argument on its contention that it properly terminated the SFECA's authority to bargain. However, we have already found that Steiny did not so terminate and is therefore bound by subsequent collectively bargained Outside Line Agreements. Thus, Steiny's argument is in essence that the Reciprocal Understanding modified the terms of the Outside Line Agreement. The arbitration committee rejected this argument in ordering Steiny to pay Farnum's back wages and benefits. We will not disturb the Arbitration Committee's finding. The Supreme Court has emphasized the limited role courts play when asked to review the merits of an arbitration decision:
 
 
 27
 Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.... The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.
 
 
 28
 United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987). Here, there is no suggestion that the parties secured the decision through fraud or through an arbitrator's dishonesty. See id. at 38.[6]
 
 
 29
 C. Presence of Steiny's counsel at Arbitration Committee hearing
 
 
 30
 The Arbitration Committee excluded Steiny's attorney from the hearing on the Farnum grievance pursuant to a long-standing internal committee rule barring attorneys from the adjudication of grievances. Steiny argues that this exclusion invalidates the arbitration award. We disagree. Steiny is bound by the grievance procedures found in the Outside Line Agreement, and no provision in that Agreement entitles it to counsel at a grievance hearing. See Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir.1985). Steiny contends that excluding its attorney violated California state law. California Code of Civil Procedure Sec. 1282.4 provides that parties to arbitration have the right to be represented by attorneys, but it also provides that the right may be waived. Thus, even assuming that Sec. 1282.4 applies to the arbitration in this case,[7] we agree with the district court that Steiny, through its bargaining representative--the SFECA, waived its right to representation of counsel.[8]
 
 
 31
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Outside Line Agreement between the SFECA and Local 6 was renewed every two years on June 1
 
 
 [2]
 The Outside Line Agreement in effect was to expire on May 31, 1984. Pursuant to the terms of the Letter of Assent, Steiny was therefore required to send written notice of termination no later than January 1, 1984
 
 
 [3]
 Farnum was a "traveler"--a union journeyman who works outside of the geographical jurisdiction of his or her home or member local union. Beginning in October 1987, Steiny began to pay Farnum at a wage and benefit rate according to the collective bargaining agreement in force for the local union in whose area Farnum was working, rather than that of Local 6
 
 
 [4]
 The Reciprocal Understanding states: "Employees entering another Local Union's jurisdiction ... shall be subject to and work in conformance with the appropriate collective bargaining agreement in force where the work is being performed."
 
 
 [5]
 Steiny also points out that in 1990, Local 6 sent it a "Letter of Assent--B," which is signed by employers who are not members of the SFECA. We find this "Letter of Assent--B" is irrelevant, however, to whether in 1984 Steiny properly terminated the SFECA's authority to bargain
 
 
 [6]
 We note as well that Steiny filed unfair labor practice charges with the National Labor Relations Board (NLRB), alleging that Local 6 and the Arbitration Committee had violated Sec. 8(b)(3) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(3), by refusing to arbitrate the Farnum grievance pursuant to the terms of the Reciprocal Understanding. The NLRB refused to issue a complaint, concluding that--
 [w]hether the parties had modified the collective bargaining agreement to give the [Ninth District Office] jurisdiction to hear this dispute, rather than the [Arbitration] Committee, is a question of contract interpretation and is cognizable under the grievance arbitration procedure of the collective bargaining agreement.
 
 
 [7]
 California Code of Civil Procedure Sec. 1282.4 applies only to arbitrations "under this title." Steiny argued to the district court that this arbitration arose not by virtue of state law, but by virtue of the Outside Line Agreement. We do not address this question because it is clear that even if it did apply, Steiny waived its right
 
 
 [8]
 We note that Steiny filed unfair labor practice charges with the NLRB, alleging that Local 6 and the Arbitration Committee had violated Sec. 8(b)(1)(b) of the National Labor Relations Act, 29 U.S.C. Sec. 158(b)(1)(b), by refusing to permit Steiny to be represented by an attorney at the Arbitration Committee hearing. As with the other charges, see supra note 7, the NLRB refused to issue a complaint, stating--
 the evidence disclosed that the collective bargaining agreement provides that grievances are to be heard by the [Arbitration] Committee and the internal rules of the [Arbitration] Committee prohibit parties appearing before said [Arbitration] Committee from being represented by attorneys.