ORANGE BELT DISTRICT COUNCIL
OF PAINTERS NO. 48,
Petitioner–Appellee,

v.

MALONEY SPECIALTIES, INC., a
corporation, Respondent–Appellant.

No. 78–2651.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 1, 1980.

Decided Dec. 24, 1980.

Rehearing Denied Feb. 25, 1981.

John D. Collins, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for respondent–appellant.

Herbert Ansell, Ansell & Ansell, Los Angeles, Cal., argued for petitioner–appellee; Joseph R. Reyna, Ansell & Ansell, Los Angeles, Cal., on brief.

Before KILKENNY and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

This appeal is from an order of the district court confirming an arbitration award. We hold that it was proper for the district court to exercise jurisdiction in this matter and to enforce the award. Although the district court should not have addressed the defense of contractual illegality, it made clear that the issue did not affect the result in the current proceeding. We therefore affirm.

I. Facts

Maloney Specialties, Inc. (Maloney) is a drywall contractor in Southern California. Maloney executed a collective bargaining agreement with Orange Belt District Council of Painters No. 48 (Orange Belt), a labor organization of journeymen and apprentice painters and drywall finishers. In addition to provisions relating to wages, hours, working conditions, and required contributions to Orange Belt Painters Trust Funds based upon the number of hours worked, the agreement provided: that Maloney would not subcontract any work covered by the agreement unless the subcontractor was a signatory to the agreement; that Maloney would be liable if the subcontractor failed to pay wages or fringe benefits under the agreement; that a "Joint Judicial Committee" composed of employee and employer representatives or an arbitrator would arbitrate any disputes or grievances, with a provision for appeal from that committee to an "Administrative Office" under the direction of an employees' organization; and that liquidated damages would be assessed against any party who violated the agreement.[1]

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Article 4, paragraph 9(B), of the agreement provided *inter alia*:

> The employer agrees that in the event he subcontracts any work covered by this Agreement, the subcontract shall be in writing and a copy submitted to District Council of Painters and Allied Trades in whose jurisdiction the work will be performed.... The subcontracting agreement shall contain a provision that the subcontractor shall be responsible for the payment of all wages and fringe benefits provided under this Agreement. In the event that any subcontractor fails to pay the wages or fringe benefits provided under this Agreement, the employer shall become liable for the payments of such sums and such sums immediately become due and payable by the employer.

Article 4, paragraph 9(C), provided *inter alia*:

> The employer signatory to this Agreement hereby agrees he will not contract any work covered by this Agreement unless the subcontractor is properly licensed and signatory to this Agreement.

Article 9, pages 20–25, prescribed a two–step arbitration procedure: a hearing before the Joint Judicial Committee with appeal to the Administrative Office contingent upon an Arbitrator's decision that the appeal had merit. This section provided *inter alia*:

> The Joint Judicial Committee and/or the Arbitrator shall have the power to impose such judgments as may tend to cure the breach and to make such decisions which may, in its opinion, most accurately reflect the intent and meaning of the Agreement.

> . . . . .

> The Joint Judicial Committee shall hear and determine such disputes and grievances which may arise and have been properly submitted to them under the terms of this Agreement.

> . . . . .

> The Joint Judicial Committee shall render a decision within seven (7) calendar days .... All decisions of the Joint Judicial Committee shall be final and binding upon all parties unless an appeal therefrom is taken in writing with the Administrative Office within ten (10) calendar days .... The Arbitrator shall render a decision upon the appeal within thirty (30) calendar days after the close of the hearing. Such decision shall be final and binding upon all parties and may be enforced as an arbitration award under the provisions of California Code of Civil Procedure.

Article 9, page 21, provided for liquidated damages:

> The parties hereto do hereby agree upon a schedule of liquidated damages for violations of this Agreement to be part of this Agreement and to be contained herein. Such schedule of damages shall be applied by the Joint Judicial Committee and/or Arbitrator in a non–discriminatory fashion against any person found in violation of any of the respective Articles of this Agreement. In any instance wherein the Schedule may be silent, the liquidated damages shall be consistent therewith. (Damages shall be construed to be liquidated damages and shall be paid into

McKellar & Associates (McKellar), a general contractor and developer, awarded a drywall contract to Maloney. Without any notice to Orange Belt, Maloney subcontracted the work to M.G. Plaster & Drywall Company (M.G.), a firm which Maloney knew had not signed the collective bargaining agreement. Orange Belt sent journeymen to the jobsite to work for Maloney but the workers instead were assigned to work for M.G. M.G. became indebted to these employees (members of Orange Belt) for approximately $8,000 in wages and approximately $7,600 in benefits payable to the Orange Belt Trust Funds. Upon learning that the employees were working for M.G., and that M.G. was not a signatory to the collective bargaining agreement, Orange Belt directed its members to cease work until the debt was paid.

McKellar, the general contractor, then executed a separate collective bargaining agreement with Orange Belt and paid the back wages due. The work on the project was completed, although the trust fund contributions remain unpaid.

In December 1976 Orange Belt filed a grievance against Maloney. Following a hearing, the Joint Judicial Committee assessed damages against Maloney for the $7,447.02 due the trust funds, plus $2,865.40 in liquidated damages. Maloney did not appeal.

On May 19, 1977 Maloney filed charges against Orange Belt for unfair labor practices in violation of § 8(e) of the National Labor Relations Act (the Act.)[2] While that case was pending before the National Labor Relations Board (the Board or NLRB), Orange Belt initiated a state action under § 301(a) of the Labor Management Relations Act (LMRA) to enforce the arbitration award.

The enforcement suit was removed to federal district court, which granted Orange Belt's motion for summary judgment. The district court accorded deference to the arbitration award and noted that the charges pending before the NLRB did not preclude relief because the Board and the federal courts had concurrent jurisdiction over the matter. The lower court also concluded that a subsequent NLRB determination that Orange Belt had engaged in unfair labor practices would not change the result in the current proceeding and that Orange Belt had not acted contrary to the principles stated in *Connell Construction Co. v. Plumbers Local No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). The court ordered Maloney to pay the amount due the union trust funds as well as the liquidated damages assessed by the Joint Judicial Committee. Maloney appeals from that decision.

## II. Jurisdiction

■ Maloney argues that the district court should have stayed the arbitration confirmation proceedings pending resolution of the unfair labor practice proceedings before the NLRB. The cases Maloney cites for this proposition, however, uphold the exercise of the district court's *discretion* in granting such a stay and note that the district court and the Board have concurrent jurisdiction in some instances.[3]

the respective Apprenticeship Trust Fund in the District Council area where the violation occurs.)

The parties recognize and acknowledge that compliance with the requirement to pay wages, fringe benefits, and to abide by the regulations and other conditions of the contract are essential to the maintenance of this Agreement, the health and safety of workmen, and fairness to all employees and employers in the industry and that it would be extremely difficult if not impracticable to fix the actual expense and damage to the workmen and the industry for any failure to comply with the provisions of this Agreement.

The schedule of liquidated damages set forth in Article 9 of this Agreement represents a reasonable estimate of the damages suffered by reason of various type infractions of this Agreement.

**2.** In February 1979 the administrative law judge hearing the unfair labor practice proceeding concluded that the subcontracting clause of the collective bargaining agreement violated § 8(e) of the Act only insofar as the self–help provisions were concerned.

**3.** *See, e. g., NLRB v. Teamsters Local 631*, 403 F.2d 667, 672 (9th Cir. 1968); *United Ass'n of*

Where Congress has affirmatively granted jurisdiction to the district court, as in § 301 cases, the district court and the NLRB share concurrent jurisdiction. *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 297–301, 91 S.Ct. 1909, 1923–1925, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The primary jurisdiction of the NLRB over unfair labor practice charges does not preclude the district court from exercising jurisdiction over an action to confirm an arbitrator's award based upon a collective bargaining agreement, even where such award presents a potential conflict with an NLRB decision. *Waggoner v. R. McGray, Inc.*, 607 F.2d 1229 (9th Cir. 1979).

Here, because the union sought confirmation of the arbitrator's award by instituting a § 301 action, the district court had concurrent jurisdiction with the NLRB. We cannot say that it was an abuse of discretion for the district court to refuse to stay the proceedings.

## III.  Arbitration Award

Federal policy generally favors arbitration of labor disputes. *See, e. g., Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 377, 94 S.Ct. 629, 636, 38 L.Ed.2d 583 (1974). This policy would be undermined "if courts had the final say on the merits of the awards." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Thus, courts should decline to review the merits of arbitration awards under collective bargaining agreements. *Id.; Alyeska Pipeline Service Co. v. International Brotherhood of Teamsters*, 557 F.2d 1263, 1267 (9th Cir. 1977). An arbitrator's award is legitimate when "it draws its essence from the collective bargaining agreement," and is unenforceable "when the arbitrator's words manifest an infidelity to [the agreement]." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct.

at 1361; *Alyeska Pipeline Service Co. v. International Brotherhood of Teamsters*, 557 F.2d at 1267.

Maloney does not contend that the arbitrator's award went beyond the scope of the collective bargaining agreement. Instead, Maloney argues: (1) that there was no "bona fide arbitration" because Maloney was not given the opportunity to negotiate the terms of the contract and because Maloney had no voice in the selection of the Joint Judicial Committee and (2) that the subcontracting clauses upon which the award was based are invalid under § 8(e) of the Act, 29 U.S.C. § 158(e).

### A.  Arbitration Proceedings

Maloney asserts that it was forced to sign a short form of the collective bargaining agreement by "a Union threat of shutting down a job." Maloney also asserts that it was denied representation in the arbitration proceedings because the employer representatives on the Joint Judicial Committee were drawn from the contractors' association, of which Maloney was not a member.

Maloney makes these assertions without having adduced evidence to support them. While the agreement consisted of a "short form" supplied by Orange Belt, there is nothing to suggest that Orange Belt threatened to shut down a job or that Maloney could not have negotiated a separate agreement had it so desired. The agreement provides that "[e]mployers signed to this Agreement who are not members of the employer association shall be entitled to select one (1) representative and one (1) alternate to the Joint Judicial Committees." Again, Maloney has produced no affidavit or other evidence that the members of the Joint Judicial Committee were not selected in accordance with this provision. We will not overturn the arbitration award on these grounds without some factual bases for them.

*Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of United States and Canada, Local Union No. 525 v. Foley*, 380 F.2d 474, 476 (9th Cir. 1967).

### B. Subcontracting Clauses

■ Section 8(e) of the Act, 29 U.S.C. § 158(e) [4], provides in part:

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry . . . .

Maloney contends that Article IV, paragraph 9(C), of the collective bargaining agreement [5] violates section 8(e) of the Act in that the subcontracting provisions have a secondary rather than a primary objective and are not within the construction industry proviso.

We have held that "the NLRB's primary jurisdiction precludes federal courts from acting as the initial arbiters of unfair labor practice charges in section 301 actions," even where the unfair labor practice is offered as a defense to enforcement of a collective bargaining agreement. *Waggoner v. R. McGray, Inc.*, 607 F.2d at 1231. Other circuits similarly have held that the defense of illegality may not be interposed in actions seeking enforcement of a collective bargaining agreement. *See Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 105 L.R.R.M. 2579 (D.C. Cir. 1980); *Huge v. Long's Hauling Co.*, 590 F.2d 457 (3d Cir. 1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979). We agree with the District of Columbia Circuit that "[i]f an employer were allowed to interpose the section 8(e) defense in any suit to enforce a collective bargaining agreement, there would be nothing left of the Board's primary jurisdiction for section 8(e) cases." 105 L.R.R.M. at 2588.

A challenge to the validity of the subcontracting provisions must lie in unfair labor practice proceedings before the NLRB, not in a § 301 action in the district court. Any conflict arising between the NLRB decision and the arbitrator's decision could be resolved at a later date. *See Cannery Warehousemen v. Haig Berberian, Inc.*, 623 F.2d 77 (9th Cir. 1980).

Thus, it was improper for the district court to consider this defense in the proceedings below. However, inasmuch as the district court concluded that a decision that Orange Belt had engaged in unfair labor practices [6] would not have changed the re-

---

**4.** Section 8(e) of the Act, 29 U.S.C. § 158(e), in its entirety provides:

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: *Provided further*, That for the purposes of this subsection and subsection (b)(4)(B) of this section the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further*, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

**5.** See note 1 *supra*.

**6.** Because it seems somewhat anomalous to enforce an award based upon a contract with provisions similar to those now being chal-

sult, it is not necessary for us to remand this matter. Maloney has failed to demonstrate that the arbitrator's award is contrary to the collective bargaining agreement. The district court's order confirming the award is AFFIRMED.

lenged in this court, *see Pacific Northwest Chapter of Associated Builders & Contractors, Inc. v. NLRB,* 609 F.2d 1341 (9th Cir. 1979), *reh'g en banc granted,* No. 78–3469 (9th Cir. Aug. 19, 1980), we feel it is incumbent upon us to note that the arbitrator's award was based not on the union–signatory clause of Article IV, paragraph 9(C), of the agreement, which arguably violates section 8(e) of the Act, but on Article IV, paragraph 9(B). Paragraph 9(B) does not require that Maloney cease doing business with any subcontractor. Instead it requires that Maloney be liable for "wages and fringe benefits provided under this Agreement" that any subcontractor (whether signatory or nonsignatory to the agreement) fails to pay.

In this instance the wages (subsequently paid by McKellar) and fringe benefits due under the collective bargaining agreement were owed but not paid by M.G. to union members working for M.G. at the same jobsite as M.G. employees whom Orange Belt understood to be working for Maloney. Thus, in a sense, Maloney, who failed to inform Orange Belt of the subcontract, had primary responsibility for the wages and fringe benefits. The union members ceased working on the job only during that period when they were not being paid; once the delinquent wages were paid, they returned to work. The reason for striking was not that M.G. was not a signatory to the contract or that Maloney subcontracted to M.G.; the main concern was that the union members be paid the money due them. Moreover, unlike the situation in *Griffith v. NLRB,* 545 F.2d 1194 (9th Cir. 1976), Orange Belt did not seek payment for any delinquencies attributable to prior jobs, but only for those arising from the specific job contracted to Maloney.

The provision and its enforcement appear to be lawful primary activity; the agreement and its maintenance addressed the labor relations of Maloney to Orange Belt members and did not interfere with M.G. or the relationship between Maloney and M.G. Furthermore, the contract provisions did not require Maloney "to cease or refrain from . . . doing business with any other person," as proscribed by 29 U.S.C. § 158, but only that Maloney pay wages and fringe benefits due to union members from any subcontractor who failed to pay.