**SHEET METAL WORKERS LOCAL UNION NO. 20**

v.

**BAYLOR HEATING AND AIR CONDITIONING, INC.**

No. IP 87–1086–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 1, 1988.

William R. Groth of Fillenwarth Dennerline Groth & Baird, Indianapolis, Ind., for plaintiff.

William M. Schiff of Kahn Dees Donovan & Kahn, Evansville, Ind., for defendant.

STECKLER, District Judge.

This matter is before the Court on two motions. On December 18, 1987 plaintiff filed a motion to strike and for summary judgment. This motion includes a request for attorney's fees. On December 28, 1987, defendant filed a motion for stay and relief from pre-trial scheduling order. The Court heard oral arguments on the motions on April 28, 1988. The Court now denies defendant's motion to stay the proceedings and grants plaintiff's motion for summary judgment. Further, each party shall pay its own attorney's fees.[1] In support of the

---

1. The Court's disposition of the motions renders moot plaintiff's motion to the extent it seeks to strike affirmative defenses and defendant's mo-

Court's decision, the Court now enters its findings of fact, conclusions of law, and a memorandum of decision.

## FINDINGS OF FACT

1. This is an action to confirm an arbitration award pursuant to section 301 of the Labor Management Relations Act. 29 U.S.C.A. § 185 (1978).

2. Plaintiff, Sheet Metal Workers Local Union No. 20 ("Local 20"), entered into a collective bargaining agreement (the "Agreement") with defendant, Baylor Heating and Air Conditioning, Inc. ("Baylor"). The Agreement was a pre-hire contract authorized by section 8(f) of the National Labor Relations Act ("NLRA"). 29 U.S.C.A. § 158(f) (1973). The Agreement was effective from May 1, 1984, through April 30, 1987.

3. In January of 1987, shortly before the Agreement was to expire, Local 20 notified Baylor that it wanted to amend the Agreement. However, on February 26, 1987, Baylor informed Local 20 that it would not enter negotiations with Local 20 to amend or renew the Agreement.

4. On March 6, 1987, Local 20 filed an unfair labor practice charge against Baylor with the National Labor Relations Board ("NLRB"). In the charge Local 20 alleged that Baylor was refusing to bargain in violation of its statutory obligation under section 8(a)(5) of the NLRA, 29 U.S.C.A. § 158(a)(5) (1973). On April 14, 1987, the Acting Regional Director of the NLRB issued a letter of determination in which he refused to issue a complaint in the matter.

5. The Agreement contained an "interest arbitration clause" that required arbitration over new contract terms. The clause, in article X, section 8 of the Agreement provided:

In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a

tion to the extent it seeks relief from the pre-tri-

renewal of this Agreement shall be settled as hereinafter provided:

(a). Should the negotiations for a renewal of this Agreement become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

\* \* \* \* \* \*

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

\* \* \* \* \* \*

(d). Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

6. Shortly after the expiration of the Agreement, Local 20, pursuant to the interest arbitration clause, submitted to the National Joint Adjustment Board ("NJAB") a "dispute arising out of the failure of the parties to negotiate a renewal of [the] Agreement." Baylor did not participate in the proceedings before the NJAB, and on June 24, 1987, the NJAB issued a unanimous decision which directed Baylor to execute a four-year agreement with Local 20 effective from June 1, 1987, through June 30, 1991. The NJAB ruled that the agreement would contain the same terms and conditions as the contract it had ordered

al scheduling order.

between Local 20 and the Sheet Metal Contractors Association of Evansville.

7. Local 20 was unable to obtain Baylor's voluntary compliance with the NJAB's decision. On October 13, 1987, Local 20 filed a "Complaint to Confirm Arbitration Award" with this Court. On November 4, 1987, Baylor filed an answer to the complaint. In the answer Baylor raised several affirmative defenses which challenged the enforceability of the NJAB decision.

8. On November 10, 1987, Baylor filed unfair labor practice charges against Local 20 with the NLRB. The charges alleged that Local 20, in prosecuting its complaint to confirm the arbitration award, is violating certain provisions of the NLRA. Specifically, Baylor claims that Local 20 is: (1) attempting to cause Baylor to discriminate against its employees in violation of section 8(b)(2); (2) coercing Baylor's employees in violation of section 8(b)(1)(A); (3) engaging in an unlawful, secondary boycott in violation of section 8(b)(4)(ii); and (4) enforcing or attempting to coerce agreement on a collective bargaining agreement in violation of section 8(e). *See* 29 U.S.C.A. §§ 158(b), 158(e) (1973).

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court now makes the following conclusions of law.

1. The Court has jurisdiction over the subject matter of this action. 29 U.S.C.A. § 185(a) (1978).

2. Since Local 20's complaint falls within this Court's primary jurisdiction under the Labor Management Relations Act, the Court need not stay the proceedings pending the outcome of Baylor's unfair labor practice charges. *See International Brotherhood of Electrical Workers, Local 532 v. Brink Construction Co.*, 825 F.2d 207 (9th Cir.1987).

3. The Court must confirm the NJAB's arbitration award since the NJAB acted within the scope of its authority under the Agreement and its award does not violate an explicit public policy. *See United Paperworkers International Union v. Misco,*

*Inc.,* —— U.S. ——, 108 S.Ct. 364, 370–74, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local 759, International Union of the United Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).

4. Baylor's affirmative defenses to Local 20's complaint are barred since Baylor did not raise these challenges to the arbitration award in a timely manner. *See Chauffeurs, Local 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1025 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). *See also, International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc.,* 831 F.2d 1309, 1311 (7th Cir.1987).

5. Despite the NLRB's ruling in *John Deklewa & Sons, Inc.,* 282 N.L.R.B. No. 184, 124 L.R.R.M. (BNA) 1185 (1987), Baylor could not repudiate the Agreement at expiration when, under the interest arbitration clause of the Agreement, the NJAB could impose a new contract on the parties. *See R.K. Burner Sheet Metal Inc. v. Local 206, Sheet Metal Worker's International Association,* No. 86–2111–R(BTM) (S.D. Cal. June 22, 1987).

6. Since Baylor did not contest the submission of the dispute to the NJAB, federal labor law did not require Local 20 to bring an action in federal court to compel arbitration before it submitted its dispute to the NJAB under the interest arbitration clause of the Agreement. *See Torrington Co. v. Local 590 of the UAW,* 803 F.2d 927, 930–31 (7th Cir.1986).

7. Local 20 is not entitled to attorney's fees since Baylor's challenge to the arbitration award was based upon a reasonable inquiry into the law even though the challenge ultimately failed. *See Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1435 (7th Cir.1987).

8. There are no genuine issues of material fact, and Local 20 is entitled to judgment on its complaint to confirm the arbitration award as a matter of law.

## MEMORANDUM OF DECISION

This case involves a dispute between a labor union and an employer over their

labor relationship. Plaintiff, Sheet Metal Workers Local Union No. 20 ("Local 20"), entered into a collective bargaining agreement (the "Agreement") with defendant, Baylor Heating and Air Conditioning, Inc. ("Baylor"). The Agreement was a pre-hire contract[2] authorized by section 8(f) of the National Labor Relations Act ("NLRA"). 29 U.S.C.A. § 158(f) (1973). The Agreement was effective from May 1, 1984, through April 30, 1987.

In January of 1987, shortly before the Agreement was to expire, Local 20 notified Baylor that it wanted to amend the Agreement. However, on February 26, 1987, Baylor informed Local 20 that it would not enter negotiations with Local 20 to amend or renew the Agreement.

Local 20 felt Baylor's position was unjustified. So, on March 6, 1987, Local 20 filed an unfair labor practice charge against Baylor with the National Labor Relations Board ("NLRB"). In the charge Local 20 alleged that Baylor was refusing to bargain in violation of its statutory obligation under section 8(a)(5) of the NLRA, 29 U.S.C.A. § 158(a)(5) (1973). On April 14, 1987, the Acting Regional Director of the NLRB issued a letter of determination in which he refused to issue a complaint in the matter. The Director based his decision upon a recent ruling of the NLRB, *John Deklewa & Sons, Inc.*, 282 N.L.R.B. No. 184, 124 L.R.R.M. (BNA) 1185 (1987). The Director stated that under the *Deklewa* ruling, "the Employer can repudiate the [section 8(f)] contract at its expiration without violating [section] 8(a)(5) and can refuse to bargain thereafter."

Having failed in its unfair labor practice charge under the NLRA, Local 20 turned to the terms of the Agreement in search of a remedy. The Agreement contained an "interest arbitration clause" that required arbitration over new contract terms. The clause, in article X, section 8 of the Agreement provided:

In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:

(a). Should the negotiations for a renewal of this Agreement become deadlocked in the opinion of the Union representative(s) or of the Employer(s) representative, or both, notice to that effect shall be given to the National Joint Adjustment Board.

\* \* \* \* \* \*

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

\* \* \* \* \* \*

(d). Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

Shortly after the expiration of the Agreement, Local 20, pursuant to the interest arbitration clause, submitted to the National Joint Adjustment Board ("NJAB") a "dispute arising out of the failure of the parties to negotiate a renewal of [the] Agreement." Baylor did not participate in the proceedings before the NJAB, and on June 24, 1987, the NJAB issued a unanimous decision which directed Baylor to execute a four-year agreement with Local 20

---

**2.** A pre-hire contract is a contract agreed to by an employer and a union *before* the workers to be covered by the contract have been hired.

This type of contract is unique to the construction industry. *See* discussion page 472 *infra.*

effective from June 1, 1987, through June 30, 1991. The NJAB ruled that the agreement would contain the same terms and conditions as the contract it had ordered between Local 20 and the Sheet Metal Contractors Association of Evansville.

Local 20 was unable to obtain Baylor's voluntary compliance with the NJAB's decision. So, on October 13, 1987, Local 20 filed a "Complaint to Confirm Arbitration Award" with this Court. On November 4, 1987, Baylor filed an answer to the complaint. In the answer Baylor raised several affirmative defenses which challenged the enforceability of the NJAB decision.

Subsequently, on November 10, 1987, Baylor filed unfair labor practice charges against Local 20 with the NLRB. The charges alleged that Local 20, in prosecuting its complaint to confirm the arbitration award, is violating certain provisions of the NLRA. Specifically, Baylor claims that Local 20 is: (1) attempting to cause Baylor to discriminate against its employees in violation of section 8(b)(2); (2) coercing Baylor's employees in violation of section 8(b)(1)(A); (3) engaging in an unlawful, secondary boycott in violation of section 8(b)(4)(ii); and (4) enforcing or attempting to coerce agreement on a collective bargaining agreement in violation of section 8(e). *See* 29 U.S.C.A. §§ 158(b), 158(e) (1973).

In light of its unfair labor practice charges before the NLRB, Baylor seeks a stay of the proceedings in this Court. Local 20, however, contends that a stay is not appropriate. Local 20 further contends that it is entitled to summary judgment.

Analysis

### I. *The Motion to Stay*

The Court will first address the motion to stay. If the Court stays the proceedings, it is not necessary to address the summary judgment motion at this time. However, since Local 20's complaint falls within this Court's primary jurisdiction, the Court finds that it need not stay the pro-

ceedings pending the outcome of Baylor's unfair labor practice charges.

The respective jurisdictions of the federal district court and the NLRB over disputes between unions and employers are not coextensive. Whether the federal district court or the NLRB has jurisdiction over a given labor dispute depends upon the type of claim involved in the action. The federal district court has primary jurisdiction over suits for enforcement of a collective bargaining agreement under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 185 (1978).[3] *Amalgamated Association of Street Employees v. Lockridge,* 403 U.S. 274, 298–99, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971). The NLRB has primary jurisdiction over unfair labor practice charges under the NLRA. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). When a case involves both the enforcement of a collective bargaining agreement under section 301 of the LMRA and alleged violations of the NLRA, the federal district court and the NLRB have concurrent jurisdiction. *See Central Valley Typographical Union No. 46 v. McClatchy Newspapers,* 762 F.2d 741, 746 (9th Cir.1985).

Since the complaint in this case seeks enforcement of a collective bargaining agreement, the Court has primary jurisdiction over the action under section 301 of the LMRA. Local 20 entitled its action a "Complaint to Confirm Arbitration Award;" however, the complaint seeks enforcement of the Agreement. The NJAB rendered its arbitration decision pursuant to the interest arbitration clause of the Agreement. A suit to confirm an arbitration award rendered pursuant to the terms of a collective bargaining agreement is a suit to enforce the collective bargaining agreement under section 301 of the LMRA. *See Textile Workers Union v. Lincoln Mills of Alabama,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *Chauffeurs, Local 135 v. Jefferson Truck-*

---

**3.** Section 301(a) of the LMRA provides that suits for a violation of a collective bargaining agreement may be instituted in any United States District Court having jurisdiction of the parties. 29 U.S.C.A. § 185(a) (1978).

*ing Co.*, 628 F.2d 1023, 1025 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981).

Additionally, Baylor's unfair labor practice charges before the NLRB do not require this Court to stay the proceedings on Local 20's complaint to confirm the arbitration award. In *Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487 (9th Cir.1980), the Ninth Circuit Court of Appeals [4] stated:

> The primary jurisdiction of the NLRB over unfair labor practice charges does not preclude the district court from exercising jurisdiction over an action to confirm an arbitrator's award based upon a collective bargaining agreement, even where such award presents a potential conflict with an NLRB decision.

*Id.* at 490 (citation omitted). However, when the union has filed a section 301 claim which is closely related to an unfair labor practice charge that the employer *has already presented to the NLRB*, appropriate deference to the jurisdiction and the expertise of the agency will usually require the district court to stay the proceedings. *See Northern California District Council of Hod Carriers v. Opinski*, 673 F.2d 1074, 1075 (9th Cir.1982). In this case, Local 20 filed its complaint to confirm the arbitration award *before* Baylor filed its unfair labor practice charges with the NLRB. In fact, Baylor's unfair labor practice charges claim that Local 20 is violating the NLRA *by prosecuting its complaint* to confirm the arbitration award. Thus, not only is Local 20's action first in priority, but the NLRB's resolution of Baylor's unfair labor practice charges can have no preclusive effect on this Court's determination of the section 301 claim since the two actions are separate and distinct. Local 20's action is for enforcement of the Agreement; Baylor's action is for enforcement of its rights under the NLRA. There is a distinction between an employer's obligation under the NLRA and its duty to satisfy lawful contractual obligations under a collective bargaining agreement. *Jim McNeff Inc. v. Todd*, 461 U.S. 260, 267, 103 S.Ct. 1753, 1757, 75 L.Ed.2d 830 (1983). Consequently, the Court's exercise of jurisdiction over Local 20's complaint to confirm the arbitration award and enforce the Agreement will not encroach upon the primary jurisdiction of the NLRB to determine the rights and obligations of the parties under the NLRA. These considerations militate against the Court staying the proceedings in this case in deference to the NLRB. *See McClatchy Newspapers*, 762 F.2d at 747–48.

A recent decision of the Ninth Circuit Court of Appeals also supports this Court's denial of Baylor's motion to stay. In *International Brotherhood of Electrical Workers, Local 532 v. Brink Construction Co.*, 825 F.2d 207 (9th Cir.1987), the International Brotherhood of Electrical Workers, Local 532 (the "Union") filed suit in federal district court to compel the Brink Construction Co. ("Brink") to submit to the dispute resolution procedure of a collective bargaining agreement. Brink subsequently filed unfair labor practice charges against the Union with the NLRB. An administrative law judge ("ALJ") for the NLRB found that Brink was not bound by the collective bargaining agreement, and thus he found that the Union's lawsuit was baseless. The ALJ ordered the Union to cease and desist from maintaining its lawsuit in federal district court. The Union appealed the ALJ's decision to the NLRB. While the Union's appeal was pending, the district court granted the Union's motion for summary judgment.

The court of appeals upheld the district court's refusal to stay its proceedings pending the NLRB's resolution of Brink's unfair labor practice charges. The court of appeals stated:

> The district court, noting both its jurisdiction to hear this suit to enforce a labor

---

**4.** For some unknown reason many of the cases in this area come out of the Ninth Circuit Court of Appeals. The Ninth Circuit Court of Appeals has dealt extensively with the labor issues involved in this case. Therefore, this Court finds the Ninth Circuit cases cited in this opinion very persuasive authority. Of course, the Ninth Circuit cases do not bind this Court. *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987).

contract and the "separate and distinct" nature of Brink's unfair labor practice change, [sic] refused to defer to the NLRB proceedings. Although the Union's LMRA § 301 suit and Brink's unfair labor practice charge involve a virtually identical issue (i.e., the merit of the Union's suit), we cannot conclude that the district court abused its discretion in denying the stay. The district court's order addressed no issues within the NLRB's primary jurisdiction. While the potential for conflict exists between the court's decision and the NLRB's ultimate decision, this alone does not compel the stay. *Cf. Orange Belt Dist. Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487, 490 (9th Cir.1981) (potential for conflict between arbiter's award and NLRB decision does not preclude district court's confirmation of award). Indeed, it would seem that deference, if any, on the issue of the validity of the Union's lawsuit should be paid to the district court, in which Congress under LMRA § 301 has vested "primary" jurisdiction of suits for breach of collective bargaining agreements, *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex Corp.*, 708 F.2d 488, 490 n. 3 (9th Cir.1983); *see also La Mirada Trucking, Inc. v. Teamsters Local Union 166*, 538 F.2d 286, 288 (9th Cir.1976) (district court, not NLRB, has authority to hear suits for breach of collective bargaining agreements), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977).

825 F.2d at 213–14 (footnote omitted).

Since the Court in this case has primary jurisdiction over Local 20's complaint to confirm the arbitration award, the Court need not stay the proceedings pending the NLRB's resolution of Baylor's unfair labor practice charges. Therefore, the Court will deny the motion to stay.

### II. *The Motion for Summary Judgment*

Local 20 filed its motion for summary judgment pursuant to Fed.R.Civ.P. 56. This rule states, in part, that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In ruling on a summary judgment motion, the district court must examine the evidence in the light most favorable to the nonmoving party by drawings all reasonable inferences in favor of that party. *See Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987); *United States Shoe Corp. v. Hackett*, 793 F.2d 161, 166 (7th Cir.1986). In this case there are no genuine issues of material fact and Local 20 is entitled to judgment on its complaint to confirm the arbitration award as a matter of law.

The Court must confirm the NJAB's arbitration award since the NJAB acted within the scope of its authority under the Agreement and its award does not violate an explicit public policy. The federal district court plays a very limited role in reviewing an arbitration award. The court cannot overturn an arbitration award when the arbitration board has acted within the scope of its authority under the collective bargaining agreement unless the award violates an explicit public policy. *United Paperworkers International Union v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 370–74, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local 759, International Union of the United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Of course, an arbitration award that enforces a provision of a collective bargaining agreement in violation of federal labor law is an arbitration award that contravenes an explicit public policy. *See, e.g., International Organization of Masters v. Trinidad*, 803 F.2d 69, 72 (2d Cir.1986). However, an arbitration award that imposes a new contract on the parties pursuant to the interest arbitration clause of a collective bargaining agreement does not contravene public policy. *See, e.g., Sheet Metal Workers International Association Local 420 v. Huggins Sheet Metal Inc.*, 752 F.2d 1473,

1475–76 (9th Cir.1985). Moreover, there is a "well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements." *Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977). Pursuant to this policy, courts have enforced arbitration awards rendered pursuant to an interest arbitration clause of a collective bargaining agreement even after the agreement has expired. *See, e.g., Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co.*, 786 F.2d 1459, 1460–61 (11th Cir.1986); *Hotel & Restaurant Employees Union, Local 703 v. Williams*, 752 F.2d 1476, 1478–79 (9th Cir. 1985). Thus, on the basis of Local 20's complaint, the NJAB's arbitration award is enforceable.

 Not only is the NJAB's arbitration award presumptively enforceable, but additionally, Baylor's affirmative defenses to Local 20's complaint are barred since Baylor did not raise these challenges to the arbitration award in a timely manner. When a party is dissatisfied with an arbitration award and believes that the award is not valid, it must make a timely challenge to the award through a motion to vacate the award. A party's "failure to move to vacate [an] arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award." *Chauffeurs, Local 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025 (7th Cir.1980). *See also, International Union of Operating Engineers, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987); *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266 (7th Cir. 1985). The LMRA does not provide a time limitation on an action to vacate an arbitration award. Therefore, the Court must determine the timeliness of a challenge to an arbitration award as a matter of federal law "by reference to the appropriate state statute of limitations." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966).

Here, the appropriate state statute of limitations is the Uniform Arbitration Act, as adopted in Indiana. *Jefferson Trucking*, 628 F.2d at 1026–27. This provision states:

Confirmation of an award.—Upon application of a party, but not before ninety [90] days after the mailing of a copy of the award to the parties, the court shall confirm an award, *unless within the time limits hereinafter imposed* grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 13 and 14 [34–4–2–13, 34–4–2–14] of this chapter. Upon confirmation, the court shall enter a judgment consistent with the award and cause such entry to be docketed as if rendered in an action in said court.

Ind.Code § 34–4–2–12 (emphasis supplied). Here, Baylor's affirmative defenses challenge the validity of the NJAB's arbitration award; Baylor could have asserted these challenges in a motion to vacate the arbitration award. Baylor, however, did not file a motion to vacate the award within ninety [90] days after the mailing of the NJAB's decision to the parties. Baylor received the NJAB's decision on June 30, 1987, and asserted its affirmative defenses to the enforcement action on November 4, 1987. Since Baylor did not timely assert its challenges to the arbitration award, the Court must bar Baylor's affirmative defenses in this action.

Despite the fact that under Local 20's complaint the NJAB arbitration award is presumptively enforceable, and despite the fact that Baylor's affirmative defenses to the complaint are barred, Baylor raises two arguments in support of its position that Local 20 is not entitled to summary judgment. First, Baylor claims that summary judgment is not appropriate since, under the NLRB's ruling in *Deklewa*, it was entitled to repudiate the Agreement at expiration without any statutory or contractual obligation to negotiate to renew the Agreement. Second, Baylor claims that Local 20 is not entitled to summary judgment since the union did not bring an action to compel arbitration before submitting the matter to

472

the NJAB. The Court disagrees with both of these arguments.

Initially, Baylor misinterprets the import of the NLRB's ruling in *Deklewa*. In *Deklewa*, the NLRB only addressed the statutory rights and obligations of unions and employers under the NLRA; the ruling did not affect the separate rights and obligations of the parties under a valid collective bargaining agreement. In *Deklewa*, the NLRB reversed its prior construction of the NLRA with respect to the *statutory obligations* of parties to section 8(f) pre-hire contracts. The Third Circuit Court of Appeals recently enforced the NLRB's ruling in *International Association of Bridge Workers, Local 3 v. NLRB (Deklewa)*, 843 F.2d 770 (3d Cir.1988).

Congress enacted section 8(f) as an amendment to the NLRA in 1959. Section 8(f) authorizes pre-hire contracts for the construction industry. Generally, under the NLRA, employees must elect or otherwise designate an exclusive union representative for collective bargaining. *See* 29 U.S.C.A. § 159(a) (1973). However, in the construction industry, where work varies by the season and the size of the project, workers do not usually remain at a single job site long enough to elect a union representative. Thus, pursuant to section 8(f) of the NLRA, employers and unions in the construction industry can "enter into pre-hire agreements which designate the union as the exclusive representative of a company's employees without a formal election, and the employees, now union members, may at any time vote to decertify the union as their exclusive representative." *Deklewa* at 773. However, the enactment of section 8(f) left two issues open: "(1) whether during its term a [section] 8(f) agreement is as binding and enforceable as any other union agreement, and (2) whether a [section] 8(f) agreement requires an employer to bargain with the union as the employees' 'exclusive representative' after the pre-hire agreement has expired." *Id.*

The NLRB originally answered both of the issues left open by the enactment of section 8(f) with a negative response. In *R.J. Smith Construction Co.*, 191 N.L.R.B. No. 693, 77 L.R.R.M. (BNA) 1493 (1971), the NLRB ruled that either party to a section 8(f) contract was free to repudiate the agreement until "further action" occurred. If further action demonstrated that the union had achieved the support of a majority of the employees, the pre-hire contract could be converted into a traditional collective bargaining agreement under the NLRA. But until such a "conversion," either party could unilaterally repudiate the contract, and there was no obligation on the employer to bargain with the union for a new contract after the current pre-hire agreement expired. In *NLRB v. Local 103, International Association of Bridge Workers (Higdon)*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), the United States Supreme Court reviewed and upheld the NLRB's decision in *R.J. Smith*. The Court concluded "that the [NLRB's] construction of the [NLRA], although perhaps not the only tenable one, is a reasonable implementation of the purposes of the relevant statutory sections." *Id.* at 341, 98 S.Ct. at 656.

Under the "conversion doctrine" set out by the NLRB in *R.J. Smith*, the NLRB and the courts developed a complex analysis to determine under what circumstances a conversion would occur. This complex analysis produced what the NLRB in *Deklewa* termed "fractious litigation." Consequently, the NLRB decided to reconsider the *R.J. Smith* decision. After an exhaustive review of the legislative history of section 8(f) and the impact of the *R.J. Smith* decision, the NLRB decided to reverse its prior construction of the NLRA with respect to the statutory obligations of the parties to a section 8(f) pre-hire contract. In *Deklewa* the NLRB ruled that parties to a section 8(f) contract could no longer unilaterally repudiate the contract; on the contrary, the agreement was enforceable until it expired. The NLRB also abandoned the "conversion doctrine" by holding that a section 8(f) contract could not be converted to a full NLRA collective bargaining agreement absent an election and certification of majority status. The Third Circuit Court of Appeals enforced the NLRB's decision finding "no viable ground on which to challenge

the reasonableness of the [NLRB's] *Deklewa* interpretation." *Deklewa* at 779.

In light of the NLRB's *Deklewa* decision, the question presented in this case is whether Baylor had the unfettered right to repudiate the Agreement at expiration notwithstanding an interest arbitration clause in the contract that allowed Local 20 to submit to the NJAB a "dispute arising out of the failure of the parties to negotiate a renewal of [the] Agreement." The Court finds that despite the *Deklewa* decision, Baylor could not repudiate the Agreement at expiration when, under the interest arbitration clause of the Agreement, the NJAB could impose a new contract on the parties. While the *Deklewa* decision held that an employer had no *statutory obligation* to negotiate a new contract after a section 8(f) contract expired, the decision did not change the *contractual obligations* of the parties under a collective bargaining agreement. The United States Supreme Court has stated that "[t]here is a critical distinction between an employer's obligation under the [NLRA] to bargain with the representative of the majority of its employees and its duty to satisfy lawful contractual obligations that accrued after it enters a prehire contract." *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 267, 103 S.Ct. 1753, 1757, 75 L.Ed.2d 830 (1983). In its unfair labor practice charge, Local 20 claimed that Baylor had an obligation under the NLRA to bargain for a new contract. The Acting Regional Director of the NLRB refused to issue a complaint on the charge since, under *Deklewa*, Baylor had no statutory obligation under the NLRA to bargain. However, Local 20's action in this Court does not concern Baylor's statutory obligations under the NLRA; rather, Local 20's action to confirm the arbitration award involves Baylor's contractual obligations under the Agreement. The NLRB's decision in *Deklewa* did not nullify Baylor's contractual obligations under the interest arbitration clause of the Agreement.

Baylor states that there should be a uniform body of labor law as determined by the NLRB. However, the Court's decision in this case will not necessarily impede the development of a uniform body of labor law. In *Deklewa* the NLRB was not faced with a pre-hire contract containing an interest arbitration clause. In fact, in the only post-*Deklewa* case this Court has discovered which deals with a pre-hire contract containing an interest arbitration clause, the court ruled that the employer was obliged to abide by an NJAB arbitration award notwithstanding *Deklewa*. *See R.K. Burner Sheet Metal Inc. v. Local 206, Sheet Metal Worker's International Association*, No. 86–2111–R(BTM) (S.D.Cal. June 22, 1987). Judge Rhoades, announcing his ruling from the bench, stated:

> Under *Deklewa* an employer may repudiate an 8(f) agreement only at its termination. [The employer] Burner contends that it has done so. However, I have already concluded that the interest arbitration clause survives the termination date of an agreement. The practical effect of such survival is to turn the 1983–86 agreement into one for six years. To allow unilateral repudiation of an agreement containing an interest arbitration clause such as the agreement in the instant case would effectively invalidate the entire provision.... Accordingly, I conclude that Burner could not unilaterally repudiate the contract even under *Deklewa*.

*Id.* transcript at 21–22.

Baylor is also concerned that if the Court confirms the NJAB's arbitration award, it will be perpetually subject to a collective bargaining agreement which contains an interest arbitration clause. Baylor need not worry. Interest arbitration is a non-mandatory subject of bargaining and can only be included in an agreement through the mutual consent of the parties. *See, e.g., Huggins Sheet Metal*, 752 F.2d at 1475; *Williams*, 752 F.2d at 1479. Furthermore, "a [u]nions's insistence on the inclusion of a mandatory arbitration clause in a successor contract without the consent of the employer would constitute a refusal to bargain in good faith." *Williams*, 752 F.2d at 1479 citing *Sheet Metal Workers' International Association, Local 14 v. Aldrich Air Conditioning Inc.*, 717 F.2d 456, 458–59 (8th Cir.1983). Thus, the

NJAB could not make the interest arbitration clause self perpetuating by including an interest arbitration clause in the new contract.

 Apart from the *Deklewa* ruling, Baylor further argues that Local 20 is not entitled to summary judgment since it did not first seek a judicial order compelling arbitration. Federal labor law, however, did not require Local 20 to bring an action in federal court to compel arbitration before it submitted its dispute to the NJAB under the interest arbitration clause of the Agreement. Generally, a compulsory submission to arbitration cannot precede a judicial determination that the collective bargaining agreement creates a duty to arbitrate. *AT & T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). However, a party waives its right to require a judicial determination of substantive arbitrability if it does not raise the issue of non-arbitrability *prior* to the arbitration proceedings. *See Torrington Co. v. Local 590 of the UAW*, 803 F.2d 927, 930–31 (7th Cir.1986). Here, Baylor did not contest the submission of the dispute to the NJAB under the interest arbitration clause of the agreement until Local 20 filed its suit in this Court to confirm the NJAB's arbitration award. Thus, Baylor has waived its right to a prior judicial determination of arbitrability.

 Finally, Local 20 seeks reimbursement for attorney's fees it has incurred in connection with its action to confirm the arbitration award. The prevailing party is entitled to attorney's fees when the losing party makes a baseless challenge to an arbitration award. For example, in *Dreis & Krump Manufacturing Co. v. International Association of Machinists, District No. 8*, 802 F.2d 247, 254–55 (7th Cir.1986), the court held that an attack on the validity of an arbitration award after the statute of limitations for such challenges had expired justified an award of attorney's fees. However, attorney's fees are not appropriate when the attorney for the losing party has made a reasonable inquiry into the law and facts. *See Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1435 (7th Cir.1987). Here, Baylor's challenge to the arbitration award relied on the *Deklewa* decision. The challenge was based upon a reasonable inquiry into the law even though the challenge ultimately failed. The law is unsettled; the impact of the *Deklewa* decision on the interest arbitration clause of a section 8(f) pre-hire contract is a matter of first impression in this Court and almost every court in the country. Therefore, this Court will not award Local 20 its attorney's fees.

By reason of all of the foregoing, the findings of fact, the conclusions of law, and the memorandum of decision, the Court hereby

DENIES Baylor's motion to stay the proceedings, and

GRANTS Local 20's motion for summary judgment.

IT IS SO ORDERED.

### JUDGMENT

Pursuant to the Court's Order granting the motion of Sheet Metal Workers Local Union No. 20 for summary judgment; and the Court on this date having entered its findings of fact and conclusions of law,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that

the June 24, 1987 decision of the National Joint Adjustment Board is confirmed, and Baylor Heating and Air Conditioning Inc. must implement all terms and conditions of that decision retroactive to June 1, 1987.

IT IS SO ORDERED.